LAW OFFICES
**CHARLES A. GRUEN**
Charles A. Gruen, Esq. (023561983)
Attorneys for Creditor
TCF Equipment Finance,
A Division of TCF National Bank
381 Broadway, Suite 300
Westwood, New Jersey 07675
(201) 342-1212

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LOTUS EXIM INTERNATIONAL, INC.<br><br>Debtor. | Chapter 7<br><br>Case No.: 18-15957-VFP |

**AFFIDAVIT IN SUPPORT OF MOTION TO**
**LIFT THE AUTOMATIC STAY**

STATE OF FLORIDA )
) SS.:
COUNTY OF PINELLAS )

GREGORY A. PAYER, of full age, being duly sworn according to law, upon his oath, deposes and says:

1. I am a Senior Special Assets Officer of TCF EQUIPMENT FINANCE, a division of TCF NATIONAL BANK ("TCFEF"), a Creditor in the above-captioned matter, and I am duly authorized to make this Affidavit on its behalf. I have personal knowledge of the facts and am competent to testify to the matters stated herein. I make this Affidavit in support of our Motion for an Order lifting the automatic stay and allowing our company to recover equipment which forms the subject matter of three (3) Loan and Security Agreements between the Debtor, LOTUS

EXIM INTERNATIONAL, INC. (hereinafter referred to as the "Debtor" or "LOTUS EXIM") and

General Electric Capital Corporation, which were subsequently assigned to TCFEF.

    2.      On or about May 27, 2015, the Debtor, LOTUS EXIM, executed a Loan and

Security Agreement number 001-0566484-527 (the "Agreement"), in favor of General Electric

Capital Corporation, for financing associated with the Debtor's acquisition of one (1) 2016

Freightliner M2106, bearing serial number 1FVHCYCY8GHGY4129, and one (1) 2015 EBY

28' Alum Flatbed Body, bearing serial number 11236 (collectively, "Vehicle 1"). Said

Agreement was for a loan in the principal amount of $152,796.60, and provides that interest

would accrue on the unpaid balance, from the date that funds were disbursed, at a rate of 7.37%

(computed on the basis of a 360 day year of twelve 30-day months.) A copy of the Agreement is

attached hereto and made a part hereof as Exhibit "A." A true copy of the Certificate of Title

issued by the New Jersey Motor Vehicle Commission, naming GE Capital Corp as the first

lienholder, is attached hereto and made a part hereof as Exhibit "B."

    3.      Pursuant to the terms of the aforesaid Agreement, principal and interest were to be

paid in sixty (60) monthly installments of $2,546.61 each, beginning on July 1, 2015 and

continuing on the same day of each month thereafter until fully paid.

    4.      On or about December 1, 2015, the Agreement was assigned from General

Electric Capital Corporation to BMO Harris Bank N.A. A copy of the Transfer

Acknowledgment is attached hereto and made a part hereof as Exhibit "C." On or about March

30, 2018, the Agreement was assigned from BMO Transportation Finance, a division of BMO

Harris Bank N.A. to TCFEF. A copy of the Notice of Assignment is attached hereto and made a

part hereof as Exhibit "D."

5.      On or about June 25, 2015, the Debtor, LOTUS EXIM, executed a Loan and
Security Agreement number 001-0566484-525 (the "Agreement 2"), in favor of General Electric
Capital Corporation, for financing associated with the Debtor's acquisition of one (1) 2016
Freightliner M2106, bearing serial number 1FVHCYCY6GHGY4128, and one (1) 2015 EBY
28' Alum Flatbed Body, bearing serial number 11238 (collectively, "Vehicle 2").  Agreement 2
was for a loan in the principal amount of $154,065.60, and provides that interest would accrue on
the unpaid balance, from the date that funds were disbursed, at a rate of 7.49% (computed on the
basis of a 360 day year of twelve 30-day months.)  A copy of Agreement 2 is attached hereto and
made a part hereof as Exhibit "E."  A true copy of the Certificate of Title issued by the New
Jersey Motor Vehicle Commission, naming GE Capital Corp as the first lienholder, is attached
hereto and made a part hereof as Exhibit "F."

6.      Pursuant to the terms of Agreement 2, principal and interest were to be paid in
sixty (60) monthly installments of $2,567.76 each, beginning on August 15, 2015 and continuing
on the same day of each month thereafter until fully paid.

7.      On or about December 1, 2015, Agreement 2 was assigned from General Electric
Capital Corporation to BMO Harris Bank N.A.  A copy of the Transfer Acknowledgment is
attached hereto and made a part hereof as Exhibit "C."   On or about March 30, 2018, Agreement
2 was assigned from BMO Transportation Finance, a division of BMO Harris Bank N.A. to
TCFEF.  A copy of the Notice of Assignment is attached hereto and made a part hereof as
Exhibit "D."

8.      On or about June 25, 2015, the Debtor, LOTUS EXIM, executed a Loan and

Security Agreement number 001-0566484-526 (the "Agreement 3"), in favor of General Electric

Capital Corporation, for financing associated with the Debtor's acquisition of one (1) 2016

Freightliner M2106, bearing serial number 1FVHCYCY4GHGY4130, and one (1) 2015 EBY

28' Alum Flatbed Body, bearing serial number 11237 (collectively, "Vehicle 3").  Agreement 3

was for a loan in the principal amount of $152,619.00, and provides that interest would accrue on

the unpaid balance, from the date that funds were disbursed, at a rate of 7.49% (computed on the

basis of a 360 day year of twelve 30-day months.)  A copy of Agreement 3 is attached hereto and

made a part hereof as Exhibit "G."  A true copy of the Certificate of Title issued by the New

Jersey Motor Vehicle Commission, naming GE Capital Corp as the first lienholder, is attached

hereto and made a part hereof as Exhibit "H."

9.      Pursuant to the terms of Agreement 3, principal and interest were to be paid in

sixty (60) monthly installments of $2,543.65 each, beginning on August 1, 2015 and continuing

on the same day of each month thereafter until fully paid.

10.      On or about December 1, 2015, Agreement 3 was assigned from General Electric

Capital Corporation to BMO Harris Bank N.A.  A copy of the Transfer Acknowledgment is

attached hereto and made a part hereof as Exhibit "C."   On or about March 30, 2018, Agreement

3 was assigned from BMO Transportation Finance, a division of BMO Harris Bank N.A. to

TCFEF.  A copy of the Notice of Assignment is attached hereto and made a part hereof as

Exhibit "D."

11.      Our company holds a security interest in the three (3) Vehicles which form

the subject matter of the Loan and Security Agreements by virtue of the specific provisions

thereof. The Court's attention is respectfully directed to paragraph 2 of the Loan and Security Agreements, wherein the following language appears:

> **2.0 Security Interest.** Debtor hereby grants to General Electric Capital Corporation, as agent for Lender and its Affiliates, and their respective successors and assigns, a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities")...
>
> See Exhibits "A", "E" and "G," at paragraph 2 thereof.

12. General Electric Capital Corporation, BMO Transportation Finance, a division of BMO Harris Bank N.A. and TCFEF, at all relevant times, have met our obligations under the Loan and Security Agreements with the Debtor. General Electric Capital Corporation provided the financing which the Debtor required to acquire the subject Vehicles.

13. The Debtor has defaulted under the terms of the Agreements by failing and refusing to pay our company the monthly installment payments due under the Agreements and otherwise has failed to perform its obligations under the Agreements. The Debtor defaulted in monthly payments in or about January of 2018. At the time the within bankruptcy proceeding was commenced, the Debtor was past due for three (3) payments. No payments have been received during the pendency of the bankruptcy case.

14. As of March 27, 2018, the date of the Debtor's bankruptcy filing, there is due and owing from the Debtor to our company the following sums pursuant to the specific provisions of the Loan and Security Agreements between the parties:

**Loan and Security Agreement No.: 001-0566484-527:**

| | |
|---|---|
| Principal Balance | $69,478.81 |
| Accumulated Late Charges | $381.99 |
| Prepayment Fee | $2,084.36 |
| Accrued Interest | $1,661.27 |
| **TOTAL:** | **$73,606.43** |

**Loan and Security Agreement No.: 001-0566484-526:**

| | |
|---|---|
| Principal Balance | $71,487.72 |
| Accumulated Late Charges | $381.55 |
| Prepayment Fee | $2,144.63 |
| Accrued Interest | $1,711.36 |
| **TOTAL:** | **$75,725.26** |

**Loan and Security Agreement No.: 001-0566484-525:**

| | |
|---|---|
| Principal Balance | $72,166.67 |
| Accumulated Late Charges | $385.17 |
| Prepayment Fee | $2,165.00 |
| Accrued Interest | $1,517.09 |
| **TOTAL:** | **$76,233.93** |

15.    In the event of the Debtor's default, our company is entitled to recover the

Vehicles and to sell same.  See Exhibits "A", "E" and "G," at paragraph 5.2.

16.    The fair market value of each Vehicle is approximately $32,000.00.  Accordingly,

TCFEF is not adequately protected.

17.    Our attorneys have attempted to contact the Trustee's counsel with respect to the

Vehicles which are the subject matter of the Loan and Security Agreements, but no response has

been received.

18.    Accordingly, we now respectfully request the Court to enter an Order lifting the

automatic stay and permitting our company to recover the Vehicles which are the subject matter of the Loan and Security Agreements, so that the Vehicles may be sold and the proceeds of sale applied to the Debtor's defaulted account with our company.

TCF EQUIPMENT FINANCE,
A Division of TCF NATIONAL BANK

By:______________________________
Gregory A. Payer
Senior Special Assets Officer

Sworn to and subscribed before
me this 15th day of May, 2018

______________________________
State of Florida
County of Pinellas
The foregoing instrument was acknowledged before me this 5/15/18 by Gregory Alan Payer
who is personally known to me or who has produced FL DL as identification.
____________________, Notary Public

MAURICIO ESTAVIL
Notary Public - State of Florida
Commission # FF 184122
My Comm. Expires Jan 15, 2019

# EXHIBIT "A"

DocuSign Envelope ID: 41EA3996-6EC0-427D-85AA-8F77C5004337
THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("Debtor"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "Lender") under the terms and provisions of this agreement (this "Agreement") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "Equipment"):

| Year | Manufacturer | Model | Description | Serial Number |
|---|---|---|---|---|
| 2016 | FREIGHTLINER | M2106 | M2106 | 1FVHCYCY8GHGY4129 |
| 2015 | EBY | 28' ALUM FLATBED BODY | 28' ALUM FLATBED BODY | 11236 |

## PAYMENT SCHEDULE

**Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $152,796.60 in 60 installments as follows:**

**(a) $2,546.61 on JULY 1, 2015 and a like sum on the like date of each month thereafter until fully paid.**

**(b) In irregular installments as follows:**

**# of Payments Payment Amount Payment Date**

**provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.**

**The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 7.37% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $450.00 equating to an annual percentage rate of 7.49% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.**

**DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.**

## USE OF PROCEEDS

**Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:**

| Amount | Payee (Name and Address) |
|---|---|
| $127,003.00 | NORTH JERSEY TRUCK CENTER INC<br>236 RTE 46 E<br>SADDLE BROOK, NJ 07663 |

**Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.**

**PAYMENT ADDRESS:** All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. **All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.**

**1.0 THE EQUIPMENT**

1.1 **Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

1.2 **Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

1.3 **Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser

Page 1 of 5 of Loan and Security Agreement dated MAY 27, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931001
PRICINGENGINE 1232285
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 41EA3996-6EC0-427D-85AA-8F77C5004337
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4 Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

**2.0 SECURITY INTEREST**

**2.1 Security Interest.** Debtor hereby grants to General Electric Capital Corporation, as agent for Lender and its Affiliates, and their respective successors and assigns, a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2 Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3 Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

**3.0 ACCOUNT MANAGEMENT AND PAYMENT PROCESSING**

**3.1 Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2 Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3 Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4 Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $20, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5 Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of Debtor's account information, credit application and credit experience on Debtor made by Lender, or any Entity requested to release such information to Lender.**

**3.6 Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such indebtedness.

**4.0 PERFORMANCE BY LENDER**

**4.1 Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of

Page 2 of 5 of Loan and Security Agreement dated MAY 27, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931001
PRICINGENGINE 1232295
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 41EA3996-6EC0-427D-85AA-8F77C5004337
THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

4.2 **Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0 DEFAULT AND REMEDIES**

5.1 **Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "Governmental Authority"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; or (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein.

5.2 **Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

5.3 **Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0 PREPAYMENT**

6.1 **Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("Excess Remittances") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Reschedule Date")) calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender permits Debtor to make a partial prepayment pursuant to clause (b)(ii) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

6.2 **Prepayment in Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Prepayment Date"). If the prepayment is made prior to the last twelve months of the contract, Debtor shall pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

Page 3 of 5 of Loan and Security Agreement dated MAY 27, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931001
PRICINGENGINE 1232295
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 41EA3996-6EC0-427D-85AA-8F77C5004387

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

**7.0 ASSIGNMENT AND GENERAL PROVISIONS**

**7.1 Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked **"ORIGINAL FOR GE CAPITAL"** which is delivered to and held by GE Capital.

**7.2 Assignment and Waiver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3 General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement.

**7.4 Additional Covenants and Oral Agreement. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**7.5 Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6 Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Texas and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Texas (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in the State of Texas, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however*, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7 Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an **"Instrument"**) will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by us in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page so delivered by you (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or digital means or used facsimile or other electronic means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature.

Page 4 of 5 of Loan and Security Agreement dated MAY 27, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931001
PRICINGENGINE 1232295

ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 41EA3996-6EC0-427D-85AA-8F77C5004337
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH GE CAPITAL

**To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.**

## DELIVERY AND ACCEPTANCE OF EQUIPMENT

(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ **On MAY 27, 2015, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor** with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ **The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor** and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ **All of the Equipment was acquired by Debtor prior to the date hereof** and was previously delivered to and unconditionally accepted by Debtor.

Dated: **MAY 27, 2015**

**Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.**

Lender: GENERAL ELECTRIC CAPITAL CORPORATION

DocuSigned by:

By: Kunkel, Mary

Name: Kunkel, Mary

Title: AUTHORIZED SIGNER

300 E. JOHN CARPENTER FREEWAY
(Street Address)

IRVING, TEXAS 75062-2712
(City, State and Zip Code)

Debtor: **LOTUS EXIM INTERNATIONAL INC.**

By: [signature]

Name: RAJENDRA KANKARIYA

Title: **PRESIDENT**

State of Organization: **NJ**

Principal Residence/Chief Executive Office/Place of Business:

**16 LELIARTS LANE**
(Street Address)

**ELMWOOD PARK, NJ 07407**
(City, State and Zip Code)

Billing/Invoice Address:

**16 LELIARTS LANE**
(Address)

**ELMWOOD PARK, BERGEN, NJ 07407**
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

**16 LELIARTS LANE**
(Equipment Street)

**ELMWOOD PARK, BERGEN, NJ 07407**
(Equipment City, County, State, and Zip)

COPY VIEW

Page 5 of 5 of Loan and Security Agreement dated MAY 27, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931001
PRICINGENGINE 1232295
ORIGINAL FOR GE CAPITAL

**EXHIBIT "B"**

# CERTIFICATE OF TITLE

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| | 1FVHC YCY8G HGY41 29 | | 2016 | FRE | M21 | TRK |

| TYPE OF TITLE | DUPLICATE NO | GVWV CLGTH | COLOR/LTLHP | DEALER I D | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 69000 | WT | 32620N | 4 | |

| FEE | ISSUE DATE | VIN-REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 85.00 | 05-29-2015 | | 74 | A |

OWNER(S)
LOTUS EXIM INTL INC
16 LELIARTS LANE
ELMWOOD PARK NJ 07407

F-FLODD S SALVAGE
P-POLICE T TAXI
L-LEMON LAW
A ACTUAL MILEAGE
N NOT THE ACTUAL MILEAGE
M MILEAGE EXCEEDS THE MECHANICAL LIMITS

NUMBER OF OWNERS 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC #:52332 64710 74070

I CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN IF ANY AS STATED

SIGNATURE

CONTROL NUMBER AS426745

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER
DATE

FIRST LIENHOLDER
DATE 05-29-2015
39215 02315 91070
GE CAPITAL CORP
P O BOX 35707
BILLINGS MT 59107

SECOND RELEASE
LIEN RELEASED BY
SIGNATURE
TITLE DATE

FIRST RELEASE
LIEN RELEASED BY
SIGNATURE
TITLE DATE

ISM/SS-1 (R9/10)

TG DA20151490809

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

VOID IF ALTERED

## ODOMETER DISCLOSURE STATEMENT AND STATEMENT OF SELLER

**NOTE: FEDERAL LAW requires that you state the mileage upon transfer of ownership. Failure to complete this disclosure or providing false information may result in fines and/or imprisonment.**

*PLEASE RUB TO VERIFY*

I/We state that the odometer now reads (do not show tenths of a mile) and to the best of my/our knowledge that reflects the actual mileage of the vehicle described on the reverse side of this Certificate of Ownership, unless one of the following statements is checked.

——(1) I/We hereby certify that to the best of my/our knowledge the odometer has exceeded its mechanical limits and the reading started again at zero.

——(2) WARNING - ODOMETER DISCREPANCY - I/We hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon for accuracy.

**NOTE: New Jersey statute provides that anyone who knowingly or willfully misrepresents the description of a vehicle or makes a false statement in any title papers; forges, changes or counterfeits a part of title papers; or uses title papers on or for the wrong motor vehicle is guilty of a misdemeanor.**

I/We hereby assign the Warrant Certificate of Ownership of the vehicle described on the front of this Certificate of Ownership subject to the following lien(s) or encumbrance(s), if any, and none other I/We further certify the accuracy of the sale price and mileage as specified below.

Buyer's Name (Print) ____________________ Driver Lic. # ____________________

Buyer's Address ____________________ Corpcode # ____________________

____________________ Sales Tax Exemption # ____________________

Co-Buyer's Name (Print) ____________________ Driver Lic. # ____________________

Co-Buyer's Address ____________________ Corpcode # ____________________

____________________

Lienholder's Name (Print) ____________________ Driver Lic. # ____________________

Lienholder's Address ____________________ Corpcode # ____________________

Seller's Name (Print) ____________________ Date of Sale ____________________

Seller's Address ____________________ Sale Price $ ____________________

____________________ Net Sale $ ____________________

Sales Tax Paid $ ____________________

**SELLER SIGN HERE**

Seller's Name (Hand Print) ____________________ Seller's Name (Hand Print) ____________________

Seller's Signature X ____________________ Seller's Signature X ____________________

Date of Odometer Statement ____________________

## STATEMENT OF BUYER

I/WE, the undersigned, hereby certify that the motor vehicle described on the reverse side of this Certificate of Ownership was purchased by me/us and I/We have compared the vehicle identification number shown on this certificate with that of the motor vehicle purchased and found that they agree in every particular

NOTE R S 39 10-11 requires that this certificate after assignment be presented to the MOTOR VEHICLE COMMISSION within ten days Failure to do so will result in a penalty of $25 which will be in addition to the filing fee for a new Certificate of Ownership.

**BUYER SIGN HERE**

Buyer's Name (Hand Print) ____________________ Buyer's Name (Hand Print) ____________________

Buyer's Signature X ____________________ Buyer's Signature X ____________________

ALTERATIONS OR ERASURES WILL VOID THIS CERTIFICATE

AS426745

# EXHIBIT "C"

# TRANSFER ACKNOWLEDGEMENT

General Electric Capital Corporation, with an office at 300 E. John Carpenter Freeway, Irving, TX 75062 ("Transferor") hereby acknowledges and confirms that effective as of 12:00 a.m. on December 1, 2015, Transferor sells, conveys, assigns, transfers and delivers to BMO Harris Bank N.A., its successors and assigns ("Transferee") and Transferee purchases, acquires and accepts all of Transferor's right, title and interest in, to and under, and assumes any liabilities arising from or related to, the accounts listed below (the "Transferred Accounts"), including, without limitation, all documents, loans, leases, security agreements, or other instruments, together with any promissory notes, guaranties, property rights, other instruments related thereto, and other writings in any way relating to the Transferred Accounts (the "Financing Documents"), all property and property rights owned by Transferor in connection with its interests in the Transferred Accounts, and any property and property rights held by Transferor as collateral solely for either or both of the payment and performance of certain obligations under the Financing Documents.

| ACCOUNT NUMBERS | OBLIGOR |
|---|---|
| 7959931001, 7959931002, and 7959931003 | LOTUS EXIM INTERNATIONAL, INC. |

[SIGNATURE PAGE FOLLOWS]

Affidavit Page 19 of 39

IN WITNESS WHEREOF, this Acknowledgment has been executed on the date below by the undersigned duly authorized attorney in fact.

**GENERAL ELECTRIC CAPITAL CORPORATION**

By: ______________________________
Name: J. Gregory Poole
Title: Attorney in Fact

Date: April 5, 2018

[Signature Page To Transfer Acknowledgment]

# EXHIBIT "D"

Notice of Assignment

March 30, 2018

Lotus Exim International Inc.
16 Leliarts Ln.
Elmwood Park, NJ 07407

Guarantor: Kankariya Jyoti

Re: Notice of Assignment of Account # 7959931-001, 7959931-002 and 7959931-003 (the "Assigned Account")

Ladies and Gentlemen:

We hereby give you notice that BMO has assigned to TCF Equipment Finance, A Division of TCF National Bank ("Purchaser") with offices located at 15450 South Outer Forty Drive, Suite 220 • Chesterfield, MO 63017, all right, title, interest and obligations (arising from and after the date of the assignment) of BMO in and to the Assigned Account, the equipment and collateral described in the Assigned Account, any Guaranty (to the extent any such Guaranty relates to the Assigned Account and the transaction contemplated thereby) and any related documents. From and after the date of this Notice, all payments of rent, principal and interest and other sums now or hereafter becoming due pursuant to the Assigned Account shall be paid directly to Purchaser, as Purchaser shall direct in Purchaser's invoices and any notices or other correspondence to be delivered by you pursuant to the Assigned Account shall be delivered to Purchaser. Any questions regarding this matter should be directed to Marie Jones Portfolio Representative Collections Group, ph# 636-779-8237, email:marie.jones@tcfef.com.

BMO Transportation Finance, a division of BMO
Harris Bank N.A.

By: Jill Boyd

Name: Jill Boyd

Title: Capital Markets Operations - Syndications

This Notice may contain a facsimile or electronic signature of Assignee or Assignor, the use of which has been duly authorized by each party and shall constitute and be deemed an original for the purposes hereof.

# EXHIBIT "E"

Affidavit Page 23 of 39
DocuSign Envelope ID: 335FF9E1-3285-4CDB-A730-4857D791FC22
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("**Debtor**"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "**Lender**") under the terms and provisions of this agreement (this "**Agreement**") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "**Equipment**"):

| Year | Manufacturer | Model | Description | Serial Number |
|---|---|---|---|---|
| 2016 | FREIGHTLINER | M2106 | M2106 | 1FVHCYCY6GHGY4128 |
| 2015 | EBY | 28' ALUM FLATBED BODY | 28' ALUM FLATBED BODY | 11238 |

## PAYMENT SCHEDULE

**Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $154,065.60 in 60 installments as follows:**

**(a) $2,567.76 on AUGUST 15, 2015 and a like sum on the like date of each month thereafter until fully paid.**

**(b) In irregular installments as follows:**

**# of Payments Payment Amount Payment Date**

**provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.**

**The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 7.37% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $450.00 equating to an annual percentage rate of 7.49% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.**

**DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.**

## USE OF PROCEEDS

**Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:**

| Amount | Payee (Name and Address) |
|---|---|
| $127,643.00 | NORTH JERSEY TRUCK CENTER INC<br>236 RTE 46 E<br>SADDLE BROOK, NJ 07663 |

**Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.**

**PAYMENT ADDRESS:** All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. **All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.**

**1.0 THE EQUIPMENT**

**1.1 Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

**1.2 Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

**1.3 Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser

Page 1 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931003
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 335FF9E1-3285-4CDB-A730-4857D70ff022
THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian.

amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4 Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

**2.0 SECURITY INTEREST**

**2.1 Security Interest.** Debtor hereby grants to General Electric Capital Corporation, as agent for Lender and its Affiliates, and their respective successors and assigns, a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2 Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3 Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

**3.0 ACCOUNT MANAGEMENT AND PAYMENT PROCESSING**

**3.1 Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2 Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3 Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4 Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $20, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5 Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of Debtor's account information, credit application and credit experience on Debtor made by Lender, or any Entity requested to release such information to Lender.**

**3.6 Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such indebtedness.

**4.0 PERFORMANCE BY LENDER**

**4.1 Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of

Page 2 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931003
ORIGINAL FOR GE CAPITAL

Affidavit Page 25 of 39
DocuSign Envelope ID: 335FF9E1-3285-4CDB-A730-4857D704FQ22
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

4.2 **Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0 DEFAULT AND REMEDIES**

5.1 **Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "Governmental Authority"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; or (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein.

5.2 **Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

5.3 **Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0 PREPAYMENT**

6.1 **Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("Excess Remittances") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Reschedule Date")) calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender permits Debtor to make a partial prepayment pursuant to clause (b)(ii) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

6.2 **Prepayment in Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Prepayment Date"). If the prepayment is made prior to the last twelve months of the contract, Debtor shall pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

Page 3 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931003
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 335FF9E1-3285-4CDB-A730-4857D7A1FC83 Affidavit Page 26 of 39

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

**7.0 ASSIGNMENT AND GENERAL PROVISIONS**

**7.1 Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked **"ORIGINAL FOR GE CAPITAL"** which is delivered to and held by GE Capital.

**7.2 Assignment and Walver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3 General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement.

**7.4 Additional Covenants and Oral Agreement. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**7.5 Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6 Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Texas and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Texas (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in the State of Texas, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however*, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7 Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an **"Instrument"**) will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by us in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page so delivered by you (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or digital means or used facsimile or other electronic means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature.

Page 4 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931003

ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 335FF9E1-3285-4CDB-A730-4857D7A1FC23
THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH GE CAPITAL

**To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.**

## DELIVERY AND ACCEPTANCE OF EQUIPMENT

(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ **On JUNE 25, 2015**, the **Equipment being purchased with the proceeds of this Agreement was delivered to Debtor** with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The **Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor** and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ **All of the Equipment was acquired by Debtor prior to the date hereof** and was previously delivered to and unconditionally accepted by Debtor.

Dated: JUNE 25, 2015 **Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.**

Lender: GENERAL ELECTRIC CAPITAL CORPORATION

By: DocuSigned by: Simmons, Bryan F01FFB8AB3414CD...

Name: Bryan Simmons

Title: AUTHORIZED SIGNER

300 E. JOHN CARPENTER FREEWAY
Street Address)

IRVING, TEXAS 75062-2712
(City, State and Zip Code)

Debtor: **LOTUS EXIM INTERNATIONAL INC.**

By: [signature]

Name:

Title: **PRESIDENT**

State of Organization: **NJ**

Principal Residence/Chief Executive Office/Place of Business:
**16 LELIARTS LANE**
(Street Address)
**ELMWOOD PARK, NJ 07407**
(City, State and Zip Code)

Billing/Invoice Address:

(Address)

(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

**16 LELIARTS LANE**
(Equipment Street)
**ELMWOOD PARK, BERGEN, NJ 07407**
(Equipment City, County, State, and Zip)

COPY VIEW

Page 5 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request: 7959931003
PRICINGENGINE 1266900
ORIGINAL FOR GE CAPITAL

# EXHIBIT "F"

# CERTIFICATE OF TITLE

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| | 1FVHC YCY6G HGY41 28 | | 2016 | FRE | M21 | TRK |

| TYPE OF TITLE | DUPLICATE NO | GVW/WC LGTH | COLOR/TITUHP | DEALER I D | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| DUPLICATE | 01 | 69000 | WT | | 4 | |

| FEE | ISSUE DATE | VIN REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 60.00 | 07-06-2015 | | 717 | A |

F-FLOOD S SALVAGE
P POLICE T TAXI
L LEMON LAW
A-ACTUAL MILEAGE
N NOT THE ACTUAL MILEAGE
M MILEAGE EXCEEDS THE MECHANICAL LIMITS

OWNER(S)
LOTUS EXIM INTL INC
16 LELIARTS LANE
ELMWOOD PARK NJ 07407

NUMBER OF OWNERS 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC #:52332 64710 74070

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE HAS BEEN RECORDED AND FILED WITH ME AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN IF ANY AS STATED

SIGNATURE

CONTROL NUMBER AU103642

**State of New Jersey**
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER
DATE

SECOND RELEASE
LIEN RELEASED BY
SIGNATURE
TITLE DATE

FIRST LIENHOLDER
DATE 07-06-2015
39215 02310 71140
GE CAPITAL CORP
BLDG 95 BREWSTER RD
NEWARK NJ 07114

FIRST RELEASE
LIEN RELEASED BY
SIGNATURE
TITLE DATE

ISM/SS-1 (R10/15)

BB V320161060096

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

VOID IF ALTERED

↑ FOLD AND TEAR AT PERFORATION ↑

STATE OF NEW JERSEY

THIS IS A RECEIPT DOCUMENT ONLY
VIN: 1FVHCYCY6GHGY4128 MILEAGE: 717 A DUP:01 STATUS:
FRE 2016 TRK M21 WT 69000 AXLE:4
52332 64710 74070
LOTUS EXIM INTL INC
16 LELIARTS LANE
ELMWOOD PARK NJ 07407
BB V320161060096 60.00 D DUPLICATE

| | | |
|---|---|---|
| TITLE D | : | 60.00 |
| SALES TAX | : | |
| LFIS | : | 0.00 |
| TOTAL (K) | : | 60.00 |

LIENHOLDER(S)
39215 02310 71140
GE CAPITAL CORP

AU103642

CUSTOMER COPY

## ODOMETER DISCLOSURE STATEMENT AND STATEMENT OF SELLER

**NOTE: FEDERAL LAW requires that you state the mileage upon transfer of ownership. Failure to complete this disclosure or providing false information may result in fines and/or imprisonment.**

*PLEASE RUB TO VERIFY*

I/We state that the odometer now reads (do not show tenths of a mile) and to the best of my/our knowledge that reflects the actual mileage of the vehicle described on the reverse side of this Certificate of Ownership, unless one of the following statements is checked.

——(1) I/We hereby certify that to the best of my/our knowledge the odometer has exceeded its mechanical limits and the reading started again at zero.

——(2) WARNING - ODOMETER DISCREPANCY - I/We hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon for accuracy.

**NOTE: New Jersey statute provides that anyone who knowingly or willfully misrepresents the description of a vehicle or makes a false statement in any title papers; forges, changes or counterfeits a part of title papers; or uses title papers on or for the wrong motor vehicle is guilty of a misdemeanor.**

I/We hereby assign the Warrant Certificate of Ownership of the vehicle described on the front of this Certificate of Ownership subject to the following lien(s) or encumbrance(s), if any, and none other. I/We further certify the accuracy of the sale price and mileage as specified below

Buyer's Name (Print) ______________________ Driver Lic. # ______________________

Buyer's Address ______________________ Corpcode # ______________________

______________________ Sales Tax Exemption # ______________________

Co-Buyer's Name (Print) ______________________ Driver Lic. # ______________________

Co-Buyer's Address ______________________ Corpcode # ______________________

______________________

Lienholder's Name (Print) ______________________ Driver Lic. # ______________________

Lienholder's Address ______________________ Corpcode # ______________________

Seller's Name (Print) ______________________ Date of Sale ______________________

Seller's Address ______________________ Sale Price $ ______________________

______________________ Net Sale $ ______________________

Sales Tax Paid $ ______________________

**SELLER SIGN HERE**

Seller's Name (Hand Print) ______________________ Seller's Name (Hand Print) ______________________

Seller's Signature X ______________________ Seller's Signature X ______________________

Date of Odometer Statement ______________________

## STATEMENT OF BUYER

I/WE, the undersigned, hereby certify that the motor vehicle described on the reverse side of this Certificate of Ownership was purchased by me/us and I/We have compared the vehicle identification number shown on this certificate with that of the motor vehicle purchased and found that they agree in every particular

NOTE R S 39 10-11 requires that this certificate after assignment be presented to the MOTOR VEHICLE COMMISSION within ten days Failure to do so will result in a penalty of $25 which will be in addition to the filing fee for a new Certificate of Ownership

**BUYER SIGN HERE**

Buyer's Name (Hand Print) ______________________ Buyer's Name (Hand Print) ______________________

Buyer's Signature X ______________________ Buyer's Signature X ______________________

ALTERATIONS OR ERASURES WILL VOID THIS CERTIFICATE AU103642

# CUSTOMER COPY

**KEEP THIS COPY IN A SAFE PLACE, SEPARATE FROM THE TITLE,**

**SHOULD YOU REQUIRE THE INFORMATION THAT IS AVAILABLE ON**

**THIS FORM FOR FUTURE REFERENCE.**

# EXHIBIT G

DocuSign Envelope ID: 734021CE-6F99-4A44-8E83-360BC5715655E
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("Debtor"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "Lender") under the terms and provisions of this agreement (this "Agreement") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "Equipment"):

| Year | Manufacturer | Model | Description | Serial Number |
|---|---|---|---|---|
| 2016 | FREIGHTLINER | M2106 | M2106 | 1FVHCYCY4GHGY4130 |
| 2015 | EBY | 28' ALUM FLATBED BODY | 28' ALUM FLATBED BODY | 11237 |

## PAYMENT SCHEDULE

**Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $152,619.00 in 60 installments as follows:**

**(a) $2,543.65 on AUGUST 1, 2015 and a like sum on the like date of each month thereafter until fully paid.**

**(b) In irregular installments as follows:**

**# of Payments Payment Amount Payment Date**

**provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.**

**The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 7.37% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $450.00 equating to an annual percentage rate of 7.49% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.**

**DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.**

## USE OF PROCEEDS

**Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:**

| Amount | Payee (Name and Address) |
|---|---|
| $126,803.00 | NORTH JERSEY TRUCK CENTER INC<br>236 RTE 46 E<br>SADDLE BROOK, NJ 07663 |

**Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.**

**PAYMENT ADDRESS:** All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. **All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.**

**1.0 THE EQUIPMENT**

**1.1 Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

**1.2 Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

**1.3 Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser

Page 1 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request: 7959931002
ORIGINAL FOR GE CAPITAL
COPY VIEW

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4 Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

**2.0 SECURITY INTEREST**

**2.1 Security Interest.** Debtor hereby grants to General Electric Capital Corporation, as agent for Lender and its Affiliates, and their respective successors and assigns, a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2 Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3 Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

**3.0 ACCOUNT MANAGEMENT AND PAYMENT PROCESSING**

**3.1 Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2 Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3 Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4 Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $20, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5 Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of Debtor's account information, credit application and credit experience on Debtor made by Lender, or any Entity requested to release such information to Lender.**

**3.6 Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such indebtedness.

**4.0 PERFORMANCE BY LENDER**

**4.1 Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of

DocuSign Envelope ID: 734021CE-6F99-4A44-8E83-360BC571565E Case 18-15957-VFP Doc 62-1 Filed 05/23/18 Entered 05/23/18 11:44:18 Desc Affidavit Page 34 of 39
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

**4.2 Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0 DEFAULT AND REMEDIES**

**5.1 Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "Governmental Authority"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; or (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein.

**5.2 Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

**5.3 Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0 PREPAYMENT**

**6.1 Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("Excess Remittances") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Reschedule Date")) calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender permits Debtor to make a partial prepayment pursuant to clause (b)(ii) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

**6.2 Prepayment in Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Prepayment Date"). If the prepayment is made prior to the last twelve months of the contract, Debtor shall pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

Page 3 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931002
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 734021CE-6F99-4A44-8E83-360BC5715655
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**7.0 ASSIGNMENT AND GENERAL PROVISIONS**

**7.1 Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked **"ORIGINAL FOR GE CAPITAL"** which is delivered to and held by GE Capital.

**7.2 Assignment and Waiver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3 General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement.

**7.4 Additional Covenants and Oral Agreement.** **THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**7.5 Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6 Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Texas and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Texas (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in the State of Texas, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however*, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7 Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an "**Instrument**") will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will print and sign (and initial where indicated), using either ink on paper (a "manual" signature) or, if instructed or expressly permitted by us in writing, by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page so delivered by you (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or digital means or used facsimile or other electronic means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature.

Page 4 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931002
ORIGINAL FOR GE CAPITAL

DocuSign Envelope ID: 734021CE-6F99-4A44-8E83-360BC571565E

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH GE CAPITAL

**To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.**

## DELIVERY AND ACCEPTANCE OF EQUIPMENT

(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ **On JUNE 25, 2015, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor** with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ **The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor** and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ **All of the Equipment was acquired by Debtor prior to the date hereof** and was previously delivered to and unconditionally accepted by Debtor.

Dated: JUNE 25, 2015

**Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.**

Lender: GENERAL ELECTRIC CAPITAL CORPORATION
DocuSigned by:
By: Chris Littlefield
540BA835C5DF49C
Name: Chris Littlefield
Title: AUTHORIZED SIGNER
300 E. JOHN CARPENTER FREEWAY
(Street Address)
IRVING, TEXAS 75062-2712
(City, State and Zip Code)

Debtor: **LOTUS EXIM INTERNATIONAL INC.**
By: [signature]
Name: RAJENDRA V. KANKARIYA
Title: **PRESIDENT**
State of Organization: **NJ**

Principal Residence/Chief Executive Office/Place of Business:
**16 LELIARTS LANE**
(Street Address)
**ELMWOOD PARK, NJ 07407**
(City, State and Zip Code)

Billing/Invoice Address:
**16 LELIARTS LANE**
(Address)
**ELMWOOD PARK, BERGEN, NJ 07407**
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:
**16 LELIARTS LANE**
(Equipment Street)
**ELMWOOD PARK, BERGEN, NJ 07407**
(Equipment City, County, State, and Zip)

COPY VIEW

Page 5 of 5 of Loan and Security Agreement dated JUNE 25, 2015 between LOTUS EXIM INTERNATIONAL INC. (Debtor) and GENERAL ELECTRIC CAPITAL CORPORATION (Lender).
621700 - Fund off fax
1.12T 10/2014
Doc Request : 7959931002
PRICINGENGINE 1266805
ORIGINAL FOR GE CAPITAL

# EXHIBIT H

# CERTIFICATE OF TITLE

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| 1FVHC | YCY4G HGY41 | 30 | 2016 | FRE | M21 | TRK |

| TYPE OF TITLE | DUPLICATE NO | GVW/WC/LGTH | COLOR/MTL/HP | DEALER I D | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| DUPLICATE | 01 | 69000 | WT | | 4 | |

| FEE | ISSUE DATE | VIN REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 60.00 | 07-06-2015 | | 614 | A |

F-FLOOD S SALVAGE
P-POLICE T TAXI
L LEMON LAW
A-ACTUAL MILEAGE
N NOT THE ACTUAL MILEAGE
M MILEAGE EXCEEDS THE MECHANICAL LIMITS

OWNER(S)

LOTUS EXIM INTL INC
16 LELIARTS LANE
ELMWOOD PARK NJ 07407

NUMBER OF OWNERS 1

NUMBER OF LIENHOLDERS 1

OWNER DL/CC #:52332 64710 74070

I CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN, IF ANY AS STATED

CONTROL NUMBER AU103641

SIGNATURE

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER

DATE

SECOND RELEASE

LIEN RELEASED BY

SIGNATURE

TITLE DATE

FIRST LIENHOLDER

DATE 07-06-2015
39215 02310 71140
GE CAPITAL CORP
BLDG 95 BREWSTER RD
NEWARK NJ 07114

FIRST RELEASE

LIEN RELEASED BY

SIGNATURE

TITLE DATE

ISM/SS-1 (R10/15)

BB V320161060094

ALTERATION OR ERASURE VOIDS THIS TITLE. KEEP IN SAFE PLACE

VOID IF ALTERED

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

↑ FOLD AND TEAR AT PERFORATION ↑

STATE OF NEW JERSEY

THIS IS A RECEIPT DOCUMENT ONLY

```
VIN:        1FVHCYCY4GHGY4130      MILEAGE:   614 A DUP:01   STATUS:
FRE   2016   TRK       M21       WT    69000 AXLE:4
52332 64710 74070                      TITLE D     :        60.00
LOTUS EXIM INTL INC                    SALES TAX :
16 LELIARTS LANE                       LFIS        :         0.00
ELMWOOD PARK    NJ 07407               TOTAL (K) :          60.00
BB V320161060094       60.00 D DUPLICATE
                                       LIENHOLDER(S)
                                       39215 02310 71140
                                       GE CAPITAL CORP
```

AU103641

CUSTOMER COPY

**ODOMETER DISCLOSURE STATEMENT AND STATEMENT OF SELLER**

**NOTE: FEDERAL LAW requires that you state the mileage upon transfer of ownership. Failure to complete this disclosure or providing false information may result in fines and/or imprisonment.**

*PLEASE RUB TO VERIFY*

I/We state that the odometer now reads (do not show tenths of a mile) and to the best of my/our knowledge that reflects the actual mileage of the vehicle described on the reverse side of this Certificate of Ownership, unless one of the following statements is checked:

——(1) I/We hereby certify that to the best of my/our knowledge the odometer has exceeded its mechanical limits and the reading started again at zero.

——(2) WARNING - ODOMETER DISCREPANCY - I/We hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon for accuracy

**NOTE: New Jersey statute provides that anyone who knowingly or willfully misrepresents the description of a vehicle or makes a false statement in any title papers; forges, changes or counterfeits a part of title papers; or uses title papers on or for the wrong motor vehicle is guilty of a misdemeanor.**

I/We hereby assign the Warrant Certificate of Ownership of the vehicle described on the front of this Certificate of Ownership subject to the following lien(s) or encumbrance(s), if any, and none other I/We further certify the accuracy of the sale price and mileage as specified below

**Buyer's Name** (Print) ____________________ Driver Lic. # ____________________

Buyer's Address ____________________ Corpcode # ____________________

____________________ Sales Tax Exemption # ____________________

**Co-Buyer's Name** (Print) ____________________ Driver Lic. # ____________________

Co-Buyer's Address ____________________ Corpcode # ____________________

____________________

**Lienholder's Name** (Print) ____________________ Driver Lic. # ____________________

Lienholder's Address ____________________ Corpcode # ____________________

**Seller's Name** (Print) ____________________ Date of Sale ____________________

Seller's Address ____________________ Sale Price $ ____________________

____________________ Net Sale $ ____________________

**SELLER SIGN HERE** Sales Tax Paid $ ____________________

Seller's Name (Hand Print) ____________________ Seller's Name (Hand Print) ____________________

Seller's Signature X ____________________ Seller's Signature X ____________________

Date of Odometer Statement ____________________

**STATEMENT OF BUYER**

I/WE, the undersigned, hereby certify that the motor vehicle described on the reverse side of this Certificate of Ownership was purchased by me/us and I/We have compared the vehicle identification number shown on this certificate with that of the motor vehicle purchased and found that they agree in every particular

NOTE R S 39 10-11 requires that this certificate after assignment be presented to the MOTOR VEHICLE COMMISSION within ten days Failure to do so will result in a penalty of $25 which will be in addition to the filing fee for a new Certificate of Ownership

**BUYER SIGN HERE**

Buyer's Name (Hand Print) ____________________ Buyer's Name (Hand Print) ____________________

Buyer's Signature X ____________________ Buyer's Signature X ____________________

ALTERATIONS OR ERASURES WILL VOID THIS CERTIFICATE AU103641

# CUSTOMER COPY

**KEEP THIS COPY IN A SAFE PLACE, SEPARATE FROM THE TITLE,**

**SHOULD YOU REQUIRE THE INFORMATION THAT IS AVAILABLE ON**

**THIS FORM FOR FUTURE REFERENCE.**