**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Stuart Komrower, Esq.
skomrower@coleschotz.com
Felice R. Yudkin
fyudkin@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Nicholas Delzotti, Chapter 7 Trustee*

|  |  |
|---|---|
| In re:<br><br>LOTUS EXIM INTERNATIONAL, INC., *et al.*[1]<br><br>Debtors. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE VINCENT F. PAPALIA<br>CASE NO. 18-15957 (VFP)<br><br>(Jointly Administered)<br><br>Chapter 7<br><br>**HEARING DATE AND TIME:**<br>September 11, 2018 at 10:00 a.m. |

**VERIFIED MOTION OF NICHOLAS DELZOTTI, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363 AUTHORIZING AND APPROVING THE SALE OF REAL PROPERTY IN TAMPA FLORIDA OF LOTUS NATURAL STONE, LLC FREE AND CLEAR OF LIENS, CLAIMS,
<u>INTERESTS AND ENCUMBRANCES</u>**

TO:   HONORABLE VINCENT F. PAPALIA
      OF THE UNITED STATES BANKRUPTCY COURT

Nicholas Delzotti ("<u>Delzotti</u>"), Chapter 7 Trustee (the "<u>Trustee</u>") for the bankruptcy estates of Lotus Exim International, Inc. ("<u>Lotus Exim</u>") and the other administratively consolidated debtors, by and through his counsel, Cole Schotz P.C., hereby files this verified

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal identification number are: Lotus Exim International, Inc. (9129), Lotus Marble & Granite, Inc. (1355), Perfect Marble & Granite, Inc. (5625), Elegant Marble & Granite, Inc. (6708), Lotus Natural Stone, LLC (7701), and Majestic Granite & Marble, Inc. (1176).

43488/0007-16156117v2

motion (the "Motion") for entry of an Order substantially in the form attached hereto as Exhibit A (the "Proposed Order") authorizing and approving the sale of real property of Lotus Natural Stone, LLC ("Lotus Natural Stone" or "Selling Debtor") free and clear of all liens, claims, interests and encumbrances. In support of the Motion, the Trustee respectfully represents:

### I.    JURISDICTION, VENUE AND STATUTORY PREDICATES

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). The relief requested herein also is warranted under Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

### II.    BACKGROUND

**A.    The Chapter 7 Cases**

4. On March 27, 2018 ("Petition Date"), Lotus Exim, Lotus Marble & Granite, Inc., Perfect Marble & Granite, Inc., Elegant Marble & Granite, Inc., Lotus Natural Stone, LLC and Majestic Granite & Marble, Inc. (together with Lotus, the "Debtors"), filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

5. The Debtors' petitions indicate that the Debtors are all owned, operated, and/or managed by individuals Jyoti Kankariya and Rajendra Kankariya (the "Kankariyas"). The Kankariyas filed a joint petition for relief under chapter 7 of the Bankruptcy Code

2

contemporaneously with the Debtors. See In re Kankariya, Case No. 18-15970 (Bankr. D.N.J.). That case has been dismissed based on the Kankariyas' failure to file schedules of assets and liabilities and other documents required by the Bankruptcy Code and Bankruptcy Rules.

6. On March 28, 2018, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed Delzotti as the Trustee in each Debtor's case.

7. On May 7, 2018, the Court entered an Order [Docket No. 49] directing the joint administration of the Debtors' chapter 7 cases.

**B.     The Real Property**

8. Lotus Natural Stone is the owner of certain real property located in the City of Tampa, Hillsborough County, Florida commonly known as 2021 N. 40th Street and 4002 E. 10th Avenue (the "Real Property").

9. The Real Property was and is subject to the following liens: (i) Mortgage and Security Agreement dated June 30, 2008 in favor of Citibank, N.A. in the original principal amount of $1,000,000 (paid in full); (ii) Credit Line Mortgage in favor of Citibank, N.A. in the original principal amount of $230,000 (paid in full); (iii) Mortgage, Security Agreement and Fixture Filing and Assignment of Rents and Leases originally in favor of C1 Bank dated November 4, 2013 in the original principal amount of $1,187,000 and currently held by Bank of the Ozarks (balance as of June 1, 2018 of $1,126,670.00); (iv) Mortgage, Assignment of Rents, Security Agreement and Fixture Filing in favor of Itria Ventures LLC dated February 23, 2018 in the original principal amount of $2,500,000;[2] and (v) liens in favor of the City of Tampa and County of Hillsborough for unpaid real estate taxes in the approximate aggregate amount of

---

[2] The Trustee does not believe that the alleged mortgage in favor of Itria Ventures LLC is valid. It was recorded within 90 days of the Petition Date and is avoidable as a preferential transfer under Section 547 of the Bankruptcy Code. Alternatively, Itria has confirmed that although a mortgage was recorded against the Real Property the loan that the mortgage was to secure was never funded.

3

43488/0007-16156117v2

$21,000 (as of May 31, 2018). As of the date hereof, and based on the foregoing, approximately $1,150,000.00 remains outstanding on asserted liens on the Real Property, exclusive of additional accrued interest and unpaid real estate taxes. The Trustee reserves his right to challenge the extent, validity and priority of all liens which will attach to the proceeds of sale until the amount of the secured claims are resolved, a process which the Trustee will expedite.

C. **Events Leading to the Execution of the Purchase Agreement**

10. After the Petition Date, CJ Ventures, LLC (the "Purchaser") expressed an interest to purchase the Real Property. After fulsome arms'-length negotiations on price and other terms, and subject to Court approval, the Trustee entered into a Purchase Agreement (the "Purchase Agreement") with the Purchaser for the sale of the Real Property. A copy of the Purchase Agreement is attached hereto as Exhibit B.

D. **Marketing of the Property**

11. The Trustee believes that the probability that a competing bidder will actually emerge with a sufficiently higher or better does not justify the time, costs and risks associated with a lengthy marketing process. Therefore, the Trustee believes that a private sale of the Real Property subject to higher and better offers, rather than a public auction, is the most cost-efficient manner in which to proceed.

12. However, to expose the Purchase Agreement to the market, the Trustee (i) engaged Fortress Commercial Real Estate LLC ("Fortress")[3] to sell the Real Property and (ii) proposes to give notice of the sale in substantially the form attached hereto as Exhibit C (the "Sale Notice") to all creditors, parties in interest, and any entities known to have expressed an

---

[3] On July 30, 2018, the Court entered an Order approving the Trustee's retention of Fortress as real estate broker. Fortress is not responsible for facilitating the Purchaser's offer on the Real Property and, therefore, the Trustee's listing agreement specifically provides that Fortress is not entitled to any commission involving a sale transaction with the Purchaser.

4

43488/0007-16156117v2

interest in the Real Property at any time. One party expressed an interest by providing a term sheet through Fortress Commercial which the Trustee has determined is not as beneficial for the estate as the Purchase Agreement. Until the date of the hearing on this motion, the Trustee will continue in his negotiations and efforts to obtain a higher or better offer. The Trustee also may, in his discretion, publish the Sale Notice in a local publication in the area where the Real Property is located.

### III.    SUMMARY OF THE PURCHASE AGREEMENT

13.    A summary of the principal terms of the Purchase Agreement, including terms that are required to be highlighted pursuant to Local Rule 6004-1, is as follows:[4]

| **Purchaser** | CJ Ventures LLC |
|---|---|
| **Purchase Price** | $1,300,000 |
| **Assets to be Sold** | Real Property |
| **Due Diligence Period** | There is a 14-day due diligence period which expires on August 13, 2018 pursuant to which Purchaser and its employees, agents, servants and contracts may enter the Real Property for purposes of conducting a survey and inspection of the property. |
| **Conditions to Sale** | Closing is contingent on the Bankruptcy Court entering the Sale Order. |
| **Termination** | If the Purchaser is not satisfied with the study and inspection of the Real Property, the Purchaser shall have the right to void the contract prior to the expiration of the Due Diligence Period. |
| **Releases** | Purchaser releases the Trustee and Selling Debtor's bankruptcy estate, of all claims, whether known or unknown, which may arise or be related to: (A) the physical condition, quality, quantity and state of repair of the Real Property and the prior management and operation of the Real Property; (b) the Real Property's compliance or lack of compliance with any federal, state or local laws or regulations and (c) any past, present or future violation of any environmental law or disposal of hazardous materials. |
| **Auction to be Conducted** | Private sale subject to higher and better offers. |

---

[4] The highlighted terms and summary of the Purchase Agreement is provided for the benefit of the Court and other parties in interest. The Purchase Agreement is incorporated herein by reference. To the extent of any conflict between this summary and the Purchase Agreement, the terms of the Purchase Agreement shall govern. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Purchase Agreement.

5

43488/0007-16156117v2

| **Closing and Other Deadlines** | Closing shall take place within seven (7) days after entry of the Sale Order. |
|---|---|
| **Deposit** | $70,000 has been paid by Purchaser to Escrow Agent. |
| **Commission payable by Seller** | At the time of transfer of title, Purchaser shall pay a commission to Bulls Realty, LLC in connection with the Purchase Agreement and any higher or better offer consummated with this particular Purchaser in the amount of three percent (3%) of the Purchase Price. |
| **Relief from Bankruptcy Rule 6004(h)** | The Trustee is seeking relief from the fourteen-day stay provided by Bankruptcy Rule 6004(h). |

## IV.    RELIEF REQUESTED AND BASIS THEREFOR

14.    By this Motion, the Trustee respectfully requests that this Court approve the Purchase Agreement and the sale of the Real Property to the Purchaser under sections 105(a) and 363 of the Bankruptcy Code.  The Trustee reserves the right to amend the Motion and seek the approval of a sale and transfer of the Real Property to a different transferee who offers a higher or better price for the Real Property which is satisfactory to the Trustee in his sole discretion.

### A.    The Purchase Agreement and Sale of the Real Property Should Be Approved Under Section 363(b) of the Bankruptcy Code

15.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate …." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In

6

43488/0007-16156117v2

re Trans World Airlines, Inc., No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

16.     The Trustee's proposed sale of the Real Property to the Purchaser under the terms of the Purchase Agreement satisfies the "sound business purpose" test for the sale of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.  The Trustee seeks to transfer the Real Property as soon as practical since the continued retention of the Real Property represents a continued drain on the Selling Debtor's estate.   The proposed sale was negotiated at arm's length and entered into in good faith by the parties.  The Trustee believes the sale is fair and reasonable and will provide a benefit to the Selling Debtor's estate.  Moreover, given that the sale of the Real Property is subject to higher and better offers, the Trustee expects that the value of the proceeds from the sale will fairly reflect the value of the property sold.

17.     Based on the foregoing, the Trustee believes the sale of the Real Property is a valid exercise of his business judgment and should be approved.

**B.      The Transfer of the Real Property Free and Clear of Liens, Claims, Interests and Encumbrances Should be Approved Under Section 363(f) of the Bankruptcy Code**

18.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

19.     The Trustee proposes that any party with a valid, perfected and unavoidable lien on the Real Property sold pursuant to this Motion will have a corresponding security interest in

7

the proceeds of such sale. Furthermore, the Trustee proposes that the failure to object to the entry of the order approving this Motion will be deemed "consent" to the sale pursuant to the order within the meaning of Section 363(f)(2) of the Bankruptcy Code. In this case, the holders of valid liens on the property are expected to consent to the sale, one of the liens on the real Property is in bona fide dispute as it was filed on account of an alleged antecedent debt within 90 days prior to the Petition Date and is therefore subject to avoidance as a preferential transfer under section 547(b) of the Bankruptcy Code and/or the loan secured by the mortgage was never funded [5], and the $1,300,000 sale price for the Real Property exceeds the value of all nonavoidable liens on the property which, as noted in paragraph 9 above, are in the aggregate amount of approximately $1,150,000.[6] As such, the requirements of section 363(f) of the Bankruptcy Code will be satisfied.

20.     <u>Carve-Out Stipulation with Bank of the Ozarks</u>. After substantial negotiation, the Trustee and Bank of the Ozarks have entered into a Stipulation ("<u>Carve-Out Stipulation</u>") pursuant to which Bank of the Ozarks agreed to subordinate its secured claim and to a carve-out for the costs and expenses incurred by the Trustee to preserve, administer and dispose of the Real Property under Section 506(c) of the Bankruptcy Code. A copy of that Stipulation is annexed as <u>Exhibit D</u> hereto and was filed with the Court on August 13, 2018 (Docket No. 148).

21.     Under the Carve-out Stipulation, Bank of the Ozarks will be paid at or promptly after closing the sum of $1,025,000.00 (the "<u>Closing Payment</u>") on account of the amount owed to Bank of the Ozarks contingent upon a sale price for the Real Property of no less than

---

[5] As noted above, Itria Ventures, LLC filed a mortgage to secure an undisclosed and disputed antecedent debt on February 23, 2018 and otherwise did not the fund the loan to which Itria's filed mortgage relates.

[6] The Trustee reserves the right to review and challenge the extent, validity and priority of all liens and claims against the Real Property and distribute the proceeds of sale to the extent that such liens and claims are reconciled and valid.

43488/0007-16156117v2

$1,300,000.00. The Trustee shall retain for the benefit of the Debtor's estate all other net proceeds above the amount of the Closing Payment from closing of a sale of the Property where the purchase price is less than or equal to $1,300,000.00. In the event that the price at closing of a sale of the Real Property exceeds $1,300,000.00, all additional net proceeds of sale in excess of that amount shall be remitted to Bank of the Ozarks until its claim is paid in full and thereafter all additional proceeds, if any, shall be retained by the Trustee. In the event that the price at closing of a sale of the Real Property exceeds $1,300,000.00, prior to the Trustee's payment to Bank of the Ozarks of any amounts above the Closing Payment, Bank of the Ozarks shall provide an itemization of all interest, fees, costs and charges in excess of the Payoff Amount to be reconciled and agreed upon by the parties.

C.     **A Private Sale of the Real Property is Appropriate Under Bankruptcy Rule 6004**

22.    Bankruptcy Rule 6004(f) and Local Rule 6004-1 permit a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added). See In re Alisa P'ship, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); In re Bakalis, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

23.    Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. See, e.g., In re Pritam Realty, Inc., 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); In re Condere Corp., 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); In re

9

Embrace Sys. Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); In re Wieboldt Stores, Inc., 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

24. The Trustee submits that the proposed private sale of the Real Property to the Purchaser in accordance with the Purchase Agreement is appropriate in light of the facts and circumstances of these Chapter 7 cases. For each day that passes, the Selling Debtor's estate accrues continued administrative expenses for, among other things, interest on secured claims, real estate taxes and related expenses to maintain the Real Property. Moreover, the Trustee believes that (i) the costs and delay arising from a lengthy, competitive auction process would be reasonably unlikely to increase value for the estate and (ii) the probability that a competing bidder will actually emerge with an offer higher or better does not justify the costs and risks associated with such delay. The sale of the Real Property to the Purchaser, however, is subject to higher and better offers. As a result, the marketing of the Real Property by Fortress and the notice provided herein will still allow the Trustee to "market test" the Real Property and maximize its value for the benefit of the Selling Debtor's estate.

**D.    The Purchaser Should be Granted the Protection of Section 363(m) of the Bankruptcy Code.**

25. The Trustee requests the Court to find that the Purchaser is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

26. Specifically, section 363(m) of the Bankruptcy Code provides that:

> [the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in

10

43488/0007-16156117v2

>good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects the Purchaser of assets sold pursuant to Section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

27. While the Bankruptcy Code does not define "good faith," the Third Circuit in Abbots Dairies held that:

>[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders" to show lack of good faith); see also In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on integrity of [an actor's] conduct during the sale proceedings") (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

28. The Purchaser is entitled to all of the protections of section 363(m) of the Bankruptcy Code. The Purchase Agreement was negotiated fairly, at arms-length and in good faith, with both parties represented by their own counsel. The Purchaser is not affiliated with the Debtors, the Trustee or any associated entity and, therefore, all negotiations were undertaken in good faith and in compliance with the Bankruptcy Code. Accordingly, the Trustee requests the Purchaser be granted the protections of Section 363(m) of the Bankruptcy Code.

11

E. **Relief from the Fourteen Day Waiting Period Under Bankruptcy Rule 6004(h) is Appropriate**

29. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee respectfully requests that the Order be effective immediately by providing that the fourteen (14) day stay period under Bankruptcy Rule 6004(h) is waived.

30. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, a leading treatise suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.10 (Alan N. Resnick & Henry J. Somme reds., 15th ed. rev. 2009). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id. The Trustee seeks authority to transfer the Real Property and close on the transaction no later than seven (7) days after approval of this Motion, consistent with his obligation under the Purchase Agreement to use commercial reasonable efforts to do so. Accordingly, the Trustee hereby requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

43488/0007-16156117v2

## V.    NOTICE AND SOLICITATION OF HIHGER AND BETTER OFFERS

31. Notice of this Motion has been provided by electronic transmission or regular mail to (a) all entities known to have expressed an interest in the Real Property at any time; (b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Real Property; (c) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) all creditors listed on the mailing matrices accompanying the consolidated Debtors' chapter 7 petitions, (e) the United States Attorneys' office; (f) the state Attorney General's office where the Real Property is located; (g) the Internal Revenue Service, (h) those parties who have filed the appropriate notice requesting notice of all pleadings filed in the Chapter 7 cases and (i) all parties who have filed any proofs of claim in any of the consolidated cases to date.  Additionally, the Trustee will serve the Sale Notice on all other known creditors of the Selling Debtor[7] and reserves the discretion to also place an advertisement of the sale in a newspaper in circulation in the area of the Real Property.  To save costs, the Trustee proposes to serve a full set of the Motion papers upon the parties listed in the foregoing subparagraphs except for except for (d) and any other potential creditors, as to whom the Trustee will serve only the Sale Notice annexed as Exhibit C which includes a statement that copies of the complete Motion papers are available upon request.  The Trustee submits that, under the circumstances, no other or further notice is required for the solicitation of potential higher and/or better offers and for court approval of the Purchase Agreement and sale.

---

[7] As the Court is aware, the Debtors have failed to file detailed schedules of assets and liabilities nor, to date, to provide access to their financial records to enable the Trustee to ascertain the existence of every potential creditor.

## VI. NO PRIOR REQUEST

32. No prior request for the relief sought in this Motion has been made to this or any other Court.

## VII. CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that this Court (i) grant the Motion and the relief requested herein and (ii) grant such relief as it deems just and proper under the circumstances.

**COLE SCHOTZ P.C.**
*Attorneys for Nicholas Delzotti, Chapter 7 Trustee*

By: */s/ Stuart Komrower*
    Stuart Komrower, Esq.
DATED: August 14, 2018    Felice Yudkin, Esq.

14

43488/0007-16156117v2

## VERIFICATION

Nicolas Delzotti, of full age, certifies as follows:

1. I am the Chapter 7 Trustee of Lotus Natural Stone, LLC, one of the within Chapter 7 debtors (collectively, the "Debtors"). As such, I have full knowledge of the facts set forth in, and am duly authorized to make, this Motion on behalf of the Debtors' estates.

2. I have read the foregoing Verified Motion and certify that the statements contained therein are true based upon my personal knowledge, information and belief.

3. I am aware that if any of the factual statements contained in the Verified Application are willfully false, I am subject to punishment.

DATED: August 13, 2018

_____
NICHOLAS DELZOTTI

15

43488/0007-16156117v2