Joseph Lubertazzi, Jr.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 639-2082
Email: jlubertazzi@mccarter.com
*Attorneys for Provident Bank*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 18-15957 (VFP) |
| LOTUS EXIM INTERNATIONAL, INC. *et al.*,[1] | (Jointly Administered) |
| Debtors. | Chapter 7 |

**PROVIDENT BANK'S RESPONSE IN OPPOSITION TO RAKESH SETHI'S MOTION FOR ENTRY OF ORDER TO QUASH SUBPOENA, AS CUSTODIAN OF RECORDS FOR LOTUS EXIM INTERNATIONAL, INC., FOR THE RULE 2004 EXAMINATION, ISSUED IN HIS PERSONAL CAPACITY FOR CORPORATE DOCUMENTS RELATING TO LOTUS EXIM INTERNATIONAL, INC. AND ROCK STONE IMPORTS, INC.; FOR A REQUEST FOR ENTRY OF IMMUNITY ORDER; AND FOR RELATED RELIEF**

Provident Bank (the "**Bank**"), by and through its undersigned counsel, submits this response in opposition to Rakesh Sethi's ("**Sethi**") *Motion for Entry of Order to Quash Subpoena, as Custodian of Records for Lotus Exim International, Inc., for the Rule 2004 Examination, Issued in His Personal Capacity for Corporate Documents Relating to Lotus Exim International, Inc. and Rock Stone Imports, Inc.; for a Request for Entry of Immunity Order; and for Related Relief* (the "**Motion**"), and respectfully states as follows:

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal identification number are: Lotus Exim International, Inc. (9129), Lotus Marble & Granite, Inc. (1355), Perfect Marble & Granite, Inc. (5625), Elegant Marble & Granite, Inc. (6708), Lotus Natural Stone, LLC (7701) and Majestic Granite & Marble, Inc. (1176).

## **PRELIMINARY STATEMENT**

1. Since first being served with a Subpoena for Rule 2004 Examination (the "**Original Subpoena**") on September 28, 2018, Sethi has done everything in his power to avoid his legal obligation to comply, improperly attempting to invoke the Fifth Amendment on a blanket basis through his counsel. The Motion is simply the latest iteration of Sethi's campaign to frustrate Provident's lawful discovery efforts.

2. In support of the Motion, Sethi claims that during the December 4, 2018 hearing on Provident's motion to compel Sethi's compliance with the Original Subpoena (the "**Motion to Compel**"), this Court "upheld the sanctity of the Fifth Amendment and found that the [Original Subpoena] issued to Sethi in his personal capacity was inappropriate." Sethi App. ¶ 4. Rather, the Court suggested that Provident issue new subpoenas to Sethi in his corporate capacity not because the Original Subpoena was unenforceable, but because it was unlikely to result in meaningful discovery. Specifically, the Court noted that "[i]f I was called upon to rule today, even to enforce [the Original Subpoena], which I think would be a waste of time in the individual capacity, I would say Mr. Sethi has to come and answer – and respond to the specific questions and then assert the Fifth or not assert the Fifth. And if there's an issue, then you've got to come back to me." *See* Certification of Joseph Lubertazzi, Jr. ("**Lubertazzi Cert**") Exh. A, Tr. 35:25 – 36:5.

3. Provident agreed with the Court's reasoning and, on December 7, 2018, proceeded to issue three new subpoenas to Sethi, in his capacity as (1) officer and representative of Lotus Exim International, Inc. ("**Lotus**"), (2) principal, officer, director and/or representative of Rock Stone Imports, Inc. ("**Rock Stone**"), and (3) principal, member and/or representative of Quarzo USA, LLC ("**Quarzo**") (collectively, the "**Reissued Subpoenas**"). In addition to

directing the Reissued Subpoenas to Sethi in his corporate capacity, Provident also carefully revised the document demands in accordance with the Court's suggestions, so as to seek sufficiently narrow categories of documents.

4. Shortly after Sethi was served with the Reissued Subpoenas, Danielle M. Corcione, Esq., Sethi's counsel, contacted this office to request that the Reissued Subpoenas be revised so as to be issued to Sethi as "custodian of records" as opposed to in his capacity as an officer, director, member, agent and/or representative. This office complied on December 12, 2018, issuing three new subpoenas to Sethi as "custodian of records" for Lotus, Quarzo and Rock Stone (the "**Custodian Subpoenas**"), while advising Sethi's counsel that the Reissued Subpoenas would not be withdrawn, and that the Custodian Subpoenas were issued *in addition to* the Reissued Subpoenas.

5. Still dissatisfied with Provident's efforts to compromise, Ms. Corcione initiated another telephone call, during which she requested the withdrawal of the Reissued Subpoenas and made vague promises of a "rolling" document production to begin on December 21, 2018 under the Custodian Subpoenas. This office did not agree to withdraw the Reissued Subpoenas, but did indicate that Provident would be amenable to deferring the Reissued Subpoenas pending Sethi's compliance with the Custodian Subpoenas, at which time Provident would again assess whether to withdraw the Reissued Subpoenas.

6. Despite this further compromise by Provident, Sethi was still dissatisfied. Recognizing that Sethi would never comply with a subpoena that was not hand-crafted by his own counsel, this office advised Ms. Corcione on December 19, 2018 that Provident was unwilling to compromise any further, and that Sethi should respond to the Reissued Subpoenas and the Custodian Subpoenas (collectively, the "**Outstanding Subpoenas**") as he saw fit.

ME1 28904069v.1

7. As expected, despite representations by his counsel of a "rolling" production to begin on December 21, 2018, Sethi still has yet to produce a single document in response to the Outstanding Subpoenas. Instead, Sethi filed the Motion and Ms. Corcione submitted a self-serving letter to the Court falsely accusing Provident's counsel of refusing to speak with her.

8. In the Motion, Sethi has taken the following positions with respect to the Outstanding Subpoenas:

    a. Sethi claims in a single paragraph (*see* Sethi App. ¶ 9) that the Reissued Subpoenas should be quashed because they "violate Sethi's Fifth Amendment rights" and were "superseded by the Custodian Subpoenas."

    b. With respect to the Rock Stone Custodian Subpoena, Sethi claims that he is prepared to produce responsive documents, subject to his "general objections and reservations" and the entry of an immunity order.

    c. With respect to the Quarzo Custodian Subpoena, Sethi is refusing to comply on the grounds that Quarzo has retained its own counsel to respond to the subpoena.

    d. As for the Lotus Custodian Subpoena, Sethi asks the Court to quash this subpoena on the grounds that (a) he is a former, not current, employee of Lotus, and (b) his compliance with the Lotus Custodian Subpoena would violate the Fifth Amendment.

9. For the reasons explained herein, Sethi's positions with respect to the Outstanding Subpoenas are without merit and the Motion should be denied.

# LEGAL ARGUMENT

A. **There is No Legal Basis to Quash the Reissued Subpoenas**

10. In his Application, Sethi argues that the Reissued Subpoenas should be quashed because they "violate Sethi's Fifth Amendment rights" and "were superseded by the Custodian of Records Subpoenas and contradict this Court's instruction." *See* Sethi App. ¶ 9. Sethi declined to include in his Motion any legal authority to support these arguments, because no such authority exists.

11. The mere issuance of a subpoena does not violate the witness' Fifth Amendment rights. The Fifth Amendment applies only where the witness "is compelled to make a Testimonial Communication that is incriminating." *Fisher v. U.S.*, 425 U.S. 391, 408 (1976). Here, Sethi has not yet been compelled to do anything, and it is impossible for the Court to determine whether compelling particular testimony would violate the Fifth Amendment, because Sethi has not yet formally invoked the Fifth Amendment privilege in response to any particular question or document request.

12. The mere utterance of the words "Fifth Amendment" by a witness' lawyer does not constitute a valid exercise of the Fifth Amendment privilege. As previously briefed by Provident in support of its motion to compel Sethi's compliance with the Original Subpoena (the "**Motion to Compel**"), a witness may not refuse to appear for a deposition upon a blanket invocation of the Fifth Amendment, but must appear and invoke the privilege in response to each question, such that a court may have a complete record in order to determine whether the privilege was properly invoked. *See*, *e.g.*, *National Life Ins. Co. v. Hartford Acc. and Indem. Co.*, 615 F.2d 595, 596 (3d Cir. 1980). "The privilege must be invoked on a 'question-by-question basis,' and an adverse inference can only be drawn as to questions that are actually asked." *Picard v. The Estate of Steven Mendelow (In re Bernard L. Madoff Investment Securities*

*LLC)*, 560 B.R. 208, 226 (Bankr. S.D.N.Y. 2016); *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, No. 00 Civ. 7352 (GEL), 2004 WL 1418201 (S.D.N.Y. June 23, 2004) (appropriateness of invocation of privilege is determined on a question-by-question basis).

13. During the December 4, 2018 hearing on Provident's Motion to Compel, this Court made it very clear that it was unaware of any authority permitting a blanket invocation of the Fifth Amendment, and the Court advised Sethi's counsel that he would be required to invoke the privilege on a question-by-question basis in the absence of such authority. *See* Lubertazzi Cert. Exh. A, Tr. 47:18 – 48:1. Sethi has offered no such authority in his Motion papers. Accordingly, Sethi's request to quash the Reissued Subpoenas on the grounds that they "violate [his] Fifth Amendment rights" should be rejected.

14. Sethi similarly offers no legal support for his claim that the Reissued Subpoenas were "superseded" by the Custodian Subpoenas. As Sethi himself acknowledges in the Motion, the Custodian Subpoenas were issued at Sethi's request, and it was made clear by this office that they were issued "in addition to" the Reissued Subpoenas. During the December 4, 2018 hearing on Provident' Motion to Compel, the Court noted that Provident was free to issue as many subpoenas as it deemed appropriate. While Provident remains amenable to "tabling" the Reissued Subpoenas pending Sethi's compliance with the Custodian Subpoenas, it expressly reserves the right to enforce the Reissued Subpoenas.

**B.** **Sethi's Objections to the Rock Stone Custodian Subpoena are Inappropriate, and any Immunity Order Entered at His Request Must be Appropriately Limited**

15. Sethi claims that he is prepared to produce responsive documents to the Rock Stone Custodian Subpoena, "subject to his general objections and reservations –and an entry of an order directing and acknowledging that his 'act of producing (or not producing) responsive

documents . . . may not be used as evidence against [him] . . . in any criminal, civil or other legal proceeding.'" Sethi App. ¶ 10.

16. Indeed, Sethi has provided his written response to the Rock Stone Custodian Subpoena. Lubertazzi Cert. Exh. B. In addition to a host of broad "General Objections," Sethi recites certain specific objections and certain terms that he will require before producing responsive documents.

17. With respect to Request Nos. 1-4, Sethi objects to the Requests as "vague and overly broad." During the December 4, 2018 hearing on Provident's Motion to Compel, the Court reviewed each and every document request included with the Original Subpoena and considered whether they were appropriately narrow. The Court made specific suggestions to Provident's counsel regarding which requests were too broad, which were sufficiently narrow, and which could be rendered sufficiently narrow with minor revisions. In drafting the Outstanding Subpoenas, all of the Court's recommendations were incorporated. Although the written responses to the Rock Stone Custodian Subpoena are signed by Ms. Corcione, who was not present at the hearing, Mr. Sethi and his team of lawyers (including two of Ms. Corcione's partners) were present, and are fully familiar with the Court's position on the document requests. Thus, Sethi's objection to these Requests should be summarily overruled.

18. With respect to Request Nos. 11-13, Sethi objects to the Requests as "not relevant and unlikely to lead to the production of relevant evidence." These Requests seek all communications relating to the formation of Rock Stone. The Requests are particularly relevant in the context of these bankruptcy proceedings, as Lotus' accounts receivable have seemingly disappeared and a competing business (Rock Stone) was formed by Lotus' Chief Financial Officer (Sethi) shortly before Lotus received a $17 million loan from Provident. The purpose of

Rock Stone's formation, as well as the identity of any individual involved in its formation, is relevant for purposes of tracing Lotus' single largest asset – its accounts receivable. Accordingly, this objection should also be overruled.

19. With respect to Request Nos. 1-10, Sethi asserts that he will only produce responsive documents upon entry of an immunity order similar to that entered in favor of the principals of Lotus, Rajendra and Jyoti Kankariya. Specifically, pursuant to paragraph 3 of its August 2, 2018 *Order Compelling Compliance with Bankruptcy Rule 2004 Subpoenas and Granting Related Relief* [Docket No. 140], the Court ordered that "[t]he Kankariyas' compelled act of producing (or not producing) responsive documents as provided in this Order may not be used as evidence either or both of them in any criminal, civil or other legal proceeding. This limitation and prohibition are expressly intended to apply as and to the fullest extent available as set forth in *Braswell v. United States*, 478 U.S. 99, 118, 108 S. Ct. 2284, 2295 (1988)."

20. To the extent this Court is inclined to provide such immunity to Sethi, the limitations of such immunity as set forth in *Braswell* must be clearly articulated. Specifically, the *Braswell* Court held that although a corporate custodian's act of production may not be used as evidence against the individual custodian, the corporation's act of production may be used against the custodian, such that "[t]he jury may draw from the corporation's act of production the conclusion that the records in question are authentic corporate records, which the corporation possessed, and which it produced in response to the subpoena. And if the defendant held a prominent position within the corporation that produced the records, the jury may, just as it would had someone else produced the documents, reasonably infer that he had possession of the documents or knowledge of their contents." *Braswell*, 487 U.S. at 118.

21. Finally, it is notable that Sethi did not specifically invoke the Fifth Amendment privilege against self-incrimination in response to any of the Requests. Instead, Sethi has again attempted to invoke the privilege on a blanket basis, through his counsel, by including the Fifth Amendment as one of his "General Objections." As explained in section A, *supra*, the privilege must be invoked on a question-by-question basis, so as to allow the Court to determine whether it was properly invoked.

C. **Sethi is Not a Former Employee of Lotus**

22. The thrust of Sethi's Motion pertains to the Lotus Custodian Subpoena. Sethi argues that he is a *former* employee of Lotus, such that he cannot be a corporate custodian. Therefore, should Sethi comply with the Lotus Custodian Subpoena, he would be doing so in his *individual* capacity and would be protected by the Fifth Amendment's act of production privilege. For the following reasons, this argument is without merit.

23. While Sethi's Motion papers evidence a keen awareness of prior proceedings before this Court relating to the invocation of the Fifth Amendment by Lotus' principals, Rajendra and Jyoti Kankariya, Sethi seems to have selectively overlooked certain aspects of those proceedings. For example, the Kankariyas raised the identical "former employee" argument before this Court. The issue was fully briefed by the Kankariyas and the Trustee, and the Court unequivocally rejected the Kankariyas' argument:

> As to the former employee argument – and I have alluded to this already – the Court finds that there is no evidence presented by the Kankariyas beyond their – the implicit assertion that somehow they were removed from their position as a result of the bankruptcy filing for which no authority was cited, and there really exists no authority for that proposition and counsel's statements that they are former employees, but those are conclusions not supported by any facts.

> There is no resignation letter. There is no resolution. There is no other documentary or other evidence that supports the assertion that the Kankariyas are former employees.

Lubertazzi Cert. Exh. C, Tr. 60:2-14.

24.  Here, as was the case with the Kankariyas, Sethi has failed to provide a shred of evidence beyond the mere filing of the bankruptcy proceedings to support his claim that he is a "former employee" of Lotus. In fact, as discussed during the December 4, 2018 hearing on Provident's Motion to Compel, Sethi still holds himself out as Lotus' Chief Financial Officer and Vice President of Sales on his LinkedIn profile.

25.  In addition to the Court's prior ruling, which is directly on point, the Court also advised Sethi's counsel on the record during the December 4, 2018 hearing on Provident's Motion to Compel that its analysis of his Fifth Amendment argument would change if Sethi could produce evidence – even as simple as a certified statement – that his position with Lotus was terminated or otherwise discontinued prior to the bankruptcy filings. Sethi has produced no such evidence. Accordingly, as Lotus' Chief Financial Officer and Vice President of Sales, Sethi does not qualify as a "former employee" and should be compelled to comply with the Lotus Custodian Subpoena.

**D.   Sethi May Not Refuse to Comply with the Lotus Custodian Subpoena on a Blanket Invocation of the Fifth Amendment**

26.  Finally, Sethi argues that it would be a violation of his Fifth Amendment privilege to compel his compliance with the Lotus Custodian Subpoena, given his allegedly "substantial and real" fear of criminal prosecution. This argument fails for the following reasons.

27.  First, Sethi himself concedes, as he must, that "[a] corporate custodian 'may not resist a subpoena for corporate records on Fifth Amendment grounds.'" Sethi App. ¶ 14 (quoting *Braswell*, 487 U.S. at 109). Thus, given that the Lotus Custodian Subpoena was served upon

Sethi in his capacity as a custodian of records, he cannot invoke the Fifth Amendment in order to avoid compliance. As established in Section C, *supra*, Sethi has failed to demonstrate that he is a "former employee" of Lotus. Therefore, the Court may appropriately compel Sethi's compliance with the Lotus Custodian Subpoena, subject to the protections set forth in *Braswell* and recited above at paragraph 20.

28. Second, as briefed by Provident on more than one occasion and as explained by this Court on the record during the December 4, 2018 hearing on Provident's Motion to Compel, Sethi may not invoke the Fifth Amendment in a blanket manner through his counsel. Sethi must specifically invoke the privilege with respect to each separate document request to which he believes it applies, and must appear for a deposition and invoke the privilege on a question-by-question basis, under oath. Only then will the Court have the ability to determine whether the privilege was properly invoked.

## CONCLUSION

29. Based on the foregoing, Provident Bank respectfully requests that the Court deny Sethi's Motion in its entirety and direct Sethi to immediately comply with the Outstanding Subpoenas.

Respectfully submitted,

Dated: January 9, 2019  **McCARTER & ENGLISH, LLP**
Newark, New Jersey  *Attorneys for Provident Bank*

By: */s/ Joseph Lubertazzi, Jr.*
Joseph Lubertazzi, Jr.
A Member of the Firm

ME1 28904069v.1